| | |
|---|---|
| FARON TURNER, | ) |
| | ) |
| *Plaintiff/Counter-Defendant*, | ) |
| | ) Case No. 1:11-cv-270 |
| v. | ) |
| | ) Judge Mattice |
| LIBERTY NATIONAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| *Defendant/Counter-Plaintiff.* | ) |

-and-

| | |
|---|---|
| FARON TURNER, | ) |
| | ) |
| *Plaintiff/Counter-Defendant*, | ) |
| | ) Case No. 1:11-cv-271 |
| v. | ) |
| | ) Judge Mattice |
| LIBERTY NATIONAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| *Defendant/Counter-Plaintiff.* | ) |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff's Motions for Remand to State Court (Docs. 4), each filed on October 21, 2011 with a memorandum in support (Docs. 5) ("Remand Mem.") and the October 10, 2011 Affidavit of Plaintiff Faron Turner (Docs. 6, Turner Oct. Aff.).[1]

---

[1] As noted in United States Magistrate Judge Susan Lee's October 4, 2011 Order (1:11-cv-271, Doc. 3), 1:11-cv-271, *Turner v. Liberty Nat'l Life Ins. Co.,* is related to the earlier-removed but identically-captioned 1:11-cv-270, *Turner v. Liberty Nat'l Life Ins. Co.*, and a glance at the dockets of each case reveals that they have proceeded in largely the same fashion. In fact, most of the corresponding filings in these cases are identical, save for the difference in case numbers. (Docs. 5, Mem. in Supp. Pl.'s Mot. to Remand; Docs. 6, Turner Oct. Aff.; Docs. 7 Pro Hac Mot.; Docs. 8, Def.'s Respon.; Docs. 9, Order Granting Pro Hac Mot.; Docs. 10, Pl.'s Reply; Docs. 11, Def.'s Notice of Serv. of Admin. Record; Docs. 12, Pl.'s Request for Oral Arg.; Docs. 13, Def.'s Not. of Filing Admin. Record.)

A few documents do have some material differences, but all those differences arise from minor procedural differences – the different courts in which the removed cases were filed, the date they were removed, etc. – or differences in the particular insurance coverage upon which Plaintiff's claims are premised.

Defendant filed its "Memorandum in Opposition to Plaintiff's Motion to Remand to State Court" (Docs. 8) ("Response") on November 7, 2011, and Plaintiff filed his "Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand to State Court" (Docs. 10) ("Reply") on November 17, 2011. Finally, on November 18, 2011, Plaintiff filed his Requests for Oral Argument (Docs. 12).

Because the Court does not find oral argument necessary to decide this issue, Plaintiff's Requests for Oral Argument (Docs. 12) will be **DENIED**. Further, for the reasons stated below, Plaintiff's Motions for Remand to State Court (Docs. 4) will be **GRANTED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Faron Turner is the president of the Piggly Wiggly grocery store in Polk County, Tennessee and has held that position since 1997. (Doc. 6, Turner Oct. Aff. ¶ 2.) He and Debbie Turner were married on June 19, 1981, and when she died on December 1, 2010, he was the beneficiary of her life insurance contracts at issue in this dispute. (Cir. Ct. Compl. & Chancery Compl. ¶ 1.)[2]

---

(Docs. 2, Answers: substituting "coverage" or "certificate of life insurance coverage," "the life insurance coverage under Group Policy No. LNGE232410," and "$50,000" in 1:11-cv-270 for "policy," "CareerLife Plus Policy No. 36478867," and "$46247" respectively in 1:11-cv-271 and with each quoting excerpting policy language in ¶ 6 of the counterclaim); Docs. 4, Mots. to Remand to State Ct.: substituting "Circuit Court of Polk County, Tennessee, held in the Ducktown Law Court," "Seventy-Two Thousand, Five Hundred and no/100 Dollars ($72,500.00)," and "September 23" in 1:11-cv-270 for "Chancery Court of Polk County, Tennessee," "Seventy Thousand, Three Hundred Eight and 75/100 Dollars ($70,308.75)," and "September 26" in 1:11-cv-271).

Because any differences between the documents filed in 1:11-cv-270 and the corresponding documents filed in 1:11-cv-271 largely relate to limited factual differences, all citations hereinafter will refer to the same language from the corresponding filings in 1:11-cv-270 and 1:11-cv-271 unless noted otherwise.

[2] For ease of reference, the Court will refer to the complaints filed in state court by their short names, "Cir. Ct. Compl." referring to the complaint filed in the Circuit Court of Polk County, Tennessee, held in the Ducktown Law Court, 11-cv-124 (1:11-cv-270, Doc. 1-1 at pages 3-15) and with "Chancery Compl." referring to the complaint filed in the Chancery Court of Polk County, Tennessee, 2011cv31 (1:11-cv-271, Doc. 1-1 at pages 4-24).

-2-

Plaintiff alleges that on November 30 or December 1, 2009, Ms. Turner met with Larry Edward Stover, one of Defendant's sales agents, at the Piggly Wiggly to apply for additional – she already had existing life insurance policies with Defendant at that time – life insurance coverage. (*Id.* at ¶¶ 2, 4, 5.) Ms. Turner completed two applications: one application (# GE651883) was for coverage in the amount of $50,000 under the Group Term Life Policy, and other application (# JJ685983) was for a Career Life Plus policy in the face amount of $46,247.00. (*Id.* at ¶ 5.) Plaintiff alleges that both of the applications contain only Stover's handwriting, save for Ms. Turner's signature, because Stover filled out all the information on the applications and merely had Ms. Turner sign them. (*Id.*) Plaintiff also alleges that Stover post-dated the forms, filling in "December 5, 2009" as the date of execution several days after Ms. Turner actually signed the forms. (*Id.*) Defendant extended to Ms. Turner a schedule of benefits and premiums for the Group Term Life policy (# LNGE232410) and issued a policy of insurance (Policy # 36478867) for the Career Life Plus plan. (*Id.* at ¶ 6.)

After Ms. Turner died on December 1, 2010, Plaintiff promptly demanded payment under the policies, but Defendant denied that request on May 4, 2011, arguing that Ms. Turner made a misstatement on her application. (Cir. Ct. Compl. ¶ 8; Chancery Compl. ¶ 9.) Plaintiff alleges that "[t]he grounds for denying the claim are not identified as exclusions for payment" of the policies and that Defendant refused to pay a loss within 60 days after a demand has been made, in violation of Tenn. Code Ann. § 56-7-105. (*Id.*)

On August 19, 2011, after Defendant's (allegedly) bad faith denial of his claims, Plaintiff filed two lawsuits. The first, premised upon the denial of benefits under the group

term life insurance policy (# LNGE232410) with coverage in the amount of $50,000, was filed in the Circuit Court of Polk County, Tennessee held in the Ducktown Law Court as Docket No. 11-cv-124 and became Case No. 1:11-cv-270 upon Defendant's removal of that action to this Court on September 23, 2011. (Doc. 1, Notice of Removal ¶¶ 1, 3-4.) The second, premised upon the denial of benefits under Ms. Turner's CareerLife Plus policy (Policy # 36478867) in the face amount of $46,247.00, was filed in the Chancery Court of Polk County as Docket No. 2011cv-31 and became Case No. 1:11-cv-271 upon Defendant's removal of that action to this Court on September 26, 2011. (Doc. 1, Notice of Removal ¶¶ 1, 3-4.)

In support of its notices of removal filed in this Court on September 23 and September 26, Defendant argues that this Court "has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 and/or 29 U.S.C. § 1132(e), and the complete preemption doctrine of *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58 (1987)." (Docs. 1, Notices of Removal ¶ 7.) Shortly thereafter, Defendant filed its answer in each case (Docs. 2), and this Court issued a preliminary referral and scheduling order (1:11-cv-270, Doc. 3). In response to the removal and referral and scheduling order, Plaintiff filed a Motion to Remand to State Court in each case on October 21, 2011, along with a memorandum and his affidavit in support. Defendant filed a consolidated response in opposition on November 7, 2011, and Plaintiff filed his reply briefs on November 17, 2011. Finally, Plaintiff also filed a request for oral argument on the motion on November 18, 2011. Therefore, this matter is fully briefed and ripe for consideration.

### III.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing "only that power

-4-

Case 1:11-cv-00270-HSM-SKL   Document 15   Filed 03/05/12   Page 4 of 12   PageID #: 659

authorized by Constitution and statute, which is not to be expanded by judicial decree." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted)). Accordingly, courts presume that "a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) (quoting *Kokkonen*, 511 U.S. at 377) (internal citations and quotation marks omitted).

Pursuant to 28 U.S.C. § 1441(a), a civil action brought in a State court may be removed to federal district court if the district court has original jurisdiction over the matter. Federal courts have original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Further, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Where the civil action includes both "a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)" and "a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute," the entire action may be removed if it would be removable without the inclusion of the latter claim that is nonremovable or outside the court's original or supplemental jurisdiction. 28 U.S.C. § 1441(c)(1)(A)-(B). But, in such cases, the district court must sever claims falling into the latter group and remand those claims to the State court from which they were removed. 28 U.S.C. § 1441(c)(2).

## IV. ANALYSIS

In their briefs, the parties appear to agree that whether this case should be remanded turns on the question of whether the life insurance plans and policies at issue fall within the ERISA "safe harbor" provision found at 29 C.F.R. § 2510.3-1(j). (Remand Mem. 1-2; Respon. 9-10; Reply 3-4.) That provision, which was enacted "to clarify the definition of the terms 'employee welfare benefit plan' and 'welfare plan' . . . by identifying certain practices which do not constitute employee welfare benefit plans for those purposes, provides:

> (j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> > (1) No contributions are made by an employer or employee organization;
> >
> > (2) Participation the program is completely voluntary for employees or members;
> >
> > (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> >
> > (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

The parties further agree that the second and fourth criteria are satisfied, and thus the dispute centers over whether the employer, Piggly Wiggly, either made a contribution or involved itself in the program by endorsing it or doing more than merely collecting premiums through payroll deductions and sending them to the insurer. (Mem. 2-3; Respon. 12; Reply 3.)

As to the first element, there is no allegation that Piggly Wiggly made actual contributions to the employees' plans or policies, and Plaintiff – the president of the employer at issue here – states in sworn affidavits that "[n]either Piggly Wiggly nor any employee organization has made contributions to Liberty National Life Insurance Company on behalf of Piggly Wiggly employees to pay life insurance premiums" and that "Piggly Wiggly has never contributed financially toward the payment of Liberty National insurance premiums on behalf of employees." (Turner Oct. Aff ¶ 4; Doc. 10, Ex. 1 to Reply Br., Nov. 17, 2011 Turner Aff. ("Turner Nov. Aff.") ¶ 6.) Instead, Defendant argues that "Piggly Wiggly 'contributed' to the Plan by enabling its employees to utilize pre-tax dollars to purchase the group life insurance through the establishment of a Section 125 cafeteria plan." (Respon. 12.) As to the CareerLife Plus plan, Defendant argues that because it "was available on certain guaranteed issue bases only to potential insureds, like Ms. Turner, whose employer agreed to deduct insurance premium payments from the employees' salaries and to pay such premiums to Liberty National," those employees "could obtain benefits . . . that they could not have obtained outside of the emplo[y]ment relationship," and thus "Piggly Wiggly contributed to the plan within the meaning of the first prong of the safe harbor provision." (*Id.* at 15.)

Defendant's arguments are unavailing. Although there is no precedent addressing

Case 1:11-cv-00270-HSM-SKL   Document 15   Filed 03/05/12   Page 7 of 12   PageID #: 662

the meaning of the "no contributions" language from the United States Court of Appeals for the Sixth Circuit, most courts have "afforded [it] its clear meaning" and construed it to mean an actual contribution in the form of a partial (or full) payment of premiums. *Morris v. Paul Revere Ins. Grp.*, 986 F. Supp. 872, 880 (D. N.J. 1997) (continuing on to hold "[i]n this case, it is undisputed that CHCC paid all premiums for the Individual Policies. These payments by the employer are inconsistent with the unambiguous language of the regulation.") *See also*, *Letner v. Unum Life Ins. Co. of Am.*, 203 F. Supp. 2d 1291, 1301 (N.D. Fla. 2001) (noting that "[the defendant] did not provide, and the court could not locate, any authority suggesting that the term 'contribution' in the context of the ERISA safe harbor regulations is interpreted as anything other than a financial contribution" and that "[t]here are courts that have succinctly held that absent an employer's financial contribution, the plan is not governed by ERISA.") It is uncontested from not only the evidence, but the parties' assertions themselves that no such financial contributions were made by Piggly Wiggly here.

Further, even if the Court were to accept the authority cited by Defendant, those cases[3] speak to discounts negotiated by employers, discounts which have neither been shown nor alleged here. As the *Letner* court noted "[i]t is 'highly improbable' that *de minimus* and indirect contributions would resolve the issue of ERISA jurisdiction." *Id.* (quoting *Riggs v. Smith*, 953 F. Supp. 389, 394 (S.D. Fla.1997)). For the same reason, the Court declines to accept the argument that, by allowing employees to pay for their

---

[3] Notably, the Eastern District of Tennessee case cited by Defendant involved a situation where the employer directly paid approximately 35% of its employees' premiums. *Alexander v. Provident Life and Acc. Ins. Co.*, 663 F. Supp. 2d 627, 633 (E.D. Tenn. 2009). It was only in dicta that the court mentioned that the defendant in that case potentially "could still be found to have contributed the policy based on the extension of the ten percent discount to the employees based on their negotiated Salary Allotment agreement." *Id.*

Case 1:11-cv-00270-HSM-SKL Document 15 Filed 03/05/12 Page 8 of 12 PageID #: 663

insurance on a pre-tax basis, as explicitly provided for in the Internal Revenue Code, an employer makes a "contribution," particularly where that argument was only advanced in two cases involving employers that made other "contributions" in the form of discounts and where the employer itself benefits from such an arrangement by saving its portion of taxes, like FICA, as well. *Compare Brown v. Paul Revere Life Ins. Co.*, 2002 WL 1019021, at *7 (E.D. Pa. May 20, 2002) *and Moore v. Life Ins. Co. of N. Am.*, 708 F. Supp. 2d 597, 607 (N.D. W.Va. 2010) *with Hrabe v. Paul Revere Life Ins. Co.*, 951 F. Supp. 997, 1002 (M.D. Ala. 1996) (holding that "the cases cited by Revere do not convince the court that the salary conversion mechanism equates to an employer contribution," and finding that, where an employer "paid no part of the employees premiums," the employer "did not make a contribution . . and that the first element of the safe harbor test is met.") Accordingly, there is no evidence that Piggly Wiggly made any "contributions" within the meaning of the ERISA "safe harbor" provision found at 29 C.F.R. § 2510.3-1(j)(1), and the first element is satisfied.

The only question that remains is whether Piggly Wiggly "endorsed" the program within the meaning of the safe harbor provision by doing more than "permit[ting] the insurer to publicize the program to employees," "collect[ing] premiums through payroll deductions," and "remit[ting] them to the insurer." The Sixth Circuit has held that "a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan," citing examples such as "where the employer plays an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits provided thereunder," or "where the employer is named

-9-

as the plan administrator." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 436 (6th Cir.1996).

Defendant's only evidence of endorsement is the same advanced in its argument as to contributions: that, as to the group term life insurance, inclusion within the employer's "cafeteria plan is indicia of endorsement," and that, as to the CareerLife Plus policy, it was "inextricably linked to the employment relationship." (Respon. 17, 19.) As to the latter argument, by definition ERISA already applies to benefits "inextricably linked to the employment relationship," and it would read the safe harbor provision out of existence if a benefit's being "inextricably linked to the employment relationship" was sufficient to show "endorsement."

As to the former, while Defendant is correct that some courts have found that inclusion within an employer's cafeteria plan[4] is evidence of endorsement, all the cases cited by Defendant show other indicia, like negotiating the terms of the policies, administering the claims process, or other significant involvement. *See, e.g.*, *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213-14 (11th Cir. 1999) (noting that the employer "did a lot more" than allowed by the regulation, including "pick[ing] the insurer"; "decid[ing] on key terms, such as portability and the amount of coverage"; "deem[ing] certain employees ineligible to participate"; "incorporat[ing] the policy terms into the self-described summary plan description for its cafeteria plan"; and "retain[ing] the power

---

[4] As Plaintiff points out repeatedly, and accurately, the language relied heavily upon by Defendant appears to be from forms entirely drafted by Defendant, and as such, make references to documents that may or may not exist. For instance, in his affidavit, Larry Stover swore that Piggly Wiggly had "an existing Section 125 cafeteria plan" that the Premium Reduction Amendment signed by UnaVae Dilbeck, Piggly Wiggly's bookkeeper, amended, but, as Plaintiff notes, there is no evidence that there was such a plan at that time. (Stover Aff. ¶ 2; Reply at 1.)

to alter compensation reduction for tax purposes.") None of those types of behaviors either appear (from the limited evidence before the Court) or are alleged to be at issue here; Defendant approached the employer, drafted the "amendment," oversaw and administered the program, and promoted the program, largely through its employee, Larry Stover. *See, e.g.* (Doc. 8-1, Stover Aff.; Turner Nov. Aff. ¶¶ 4-8.) Accordingly, the Court does not find that Piggly Wiggly endorsed the program within the meaning of the ERISA "safe harbor" provision found at 29 C.F.R. § 2510.3-1(j)(3), and the third element is satisfied.

Because the Court has found that the first and third elements are satisfied, and because the second and fourth elements are not in dispute, the insurance plans and policies at issue here fall within the ERISA "safe harbor" provision found at 29 C.F.R. § 2510.3-1(j) and thus are not an "employee welfare benefit plan" as defined by ERISA. Further, because Defendant bears the burden of establishing jurisdiction and because it has relied entirely on its argument that the safe harbor provision was inapplicable, the Court finds that Defendant has failed to show that this Court has jurisdiction over the cases before it. Accordingly these cases will be remanded to the state courts from which they were removed.

## V. CONCLUSION

Accordingly, and for the reasons stated above, Plaintiff's Requests for Oral Argument (Docs. 12) are hereby **DENIED**, and Plaintiff's Motions for Remand to State Court (Docs. 4) are hereby **GRANTED**. *Turner v. Liberty Nat'l Life Ins. Co.*, 1:11-cv-270 shall be **REMANDED** to the Circuit Court of Polk County, Tennessee, held in the Ducktown Law Court, and *Turner v. Liberty Nat'l Life Ins. Co.*, 1:11-cv-271 shall be **REMANDED** to

the Chancery Court of Polk County, Tennessee.

The Clerk is **DIRECTED** to mail a certified copy of this Order to the Clerk of the Circuit Court of Polk County, Tennessee, held in the Ducktown Law Court, and to the Clerk of the Chancery Court of Polk County, Tennessee. The Clerk is further **DIRECTED** to close the file in this case.

**SO ORDERED** this 5th day of March, 2012.

                                              */s/Harry S. Mattice, Jr.*
                                              HARRY S. MATTICE, JR.
                                              UNITED STATES DISTRICT JUDGE